UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUZANNE M. NATTRESS,                          Case No. 16-13978

      Plaintiff                             Linda V. Parker
v.                                           United States District Judge

COMMISSIONER OF SOCIAL                       Stephanie Dawkins Davis
SECURITY,                                    United State Magistrate Judge

      Defendant(s).
_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 13)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On November 9, 2016, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim disability benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 11, 13).  Plaintiff also filed a reply in support of her motion.  (Dkt. 14).

B.    Administrative Proceedings

Plaintiff filed the instant claim for supplemental security income on October 23, 2013, alleging that she became disabled on April 1, 1998.  (Tr. 13).  The claims were initially disapproved by the Commissioner on February 25, 2014.  *Id*. Plaintiff requested a hearing and on July 28, 2015, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Martha M. Gasparovich, who considered the case de novo.  (Tr. 31-63).  In a decision dated September 9, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 10-27).  Plaintiff requested a review of this decision and on September 9, 2016, the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council denied plaintiff's request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

Plaintiff was born in 1976 and was 37 years old on the date the disability

application was filed.  (Tr. 25).  Plaintiff has no past relevant work.  *Id*.  The ALJ

applied the five-step disability analysis to plaintiff's claim and found at step one

that plaintiff had not engaged in substantial gainful activity since the application

date.  (Tr. 15).  At step two, the ALJ found that plaintiff's history of psuedotumor

cerebri, status-post thoracotomy, status-post acute respiratory failure, asthmatic

bronchitis, diabetes mellitus, type II, osteoarthritis – bilateral knees, morbid

obesity, bipolar disorder, major depressive disorder, and history of opiate

dependence were "severe" within the meaning of the second sequential step.  (Tr.

15).  At step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations.  (Tr. 15-16).  At

step four, the ALJ found that plaintiff had no past relevant work.  (Tr. 25).  The

ALJ concluded that plaintiff had the residual functional capacity to perform a

limited range of light work as follows:

> After careful consideration of the entire record, I find that
> the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 416.967(b)
> except that she is unable to stand and walk more than
> four hours in an eight-hour workday; sitting would be
> unlimited; could lift no more than 20 pounds

> occasionally and 10 pounds frequently; could only stoop,
> climb, balance, crouch, squat, crawl, or kneel
> occasionally; must avoid all hazards such as moving
> machinery and unprotected heights; would need a clean
> air environment free from concentrated levels of dust,
> fumes, gases, chemicals, and other airborne irritants;
> would be limited to simple, routine, one to three step
> tasks in a low stress environment defined as no quick
> decision making and no quick judgment required on the
> job; no interaction with the public and only occasional
> interaction with supervisors or co-workers; and would be
> unable to perform jobs that are fast pace, high
> production, or frequent changes in task expectations or
> locations.

(Tr. 18).  At step five, the ALJ denied plaintiff benefits because plaintiff could

perform a significant number of jobs available in the national economy.  (Tr. 26-

27).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

     If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.

Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled. F. Bloch,

Federal Disability Law and Practice § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two: If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions[2]

1.    Weighing of Opinion Evidence

Plaintiff's first claim of error is the ALJ's assignment of "significant weight" to the February 2014, opinion of non-examining psychologist Dr. Czarniecki who did not have the records from 2015 and never examined plaintiff. According to

---

[2] The undersigned concludes that plaintiff has only raised claims of error relating to her mental limitations. In her opening brief, plaintiff briefly mentions her "physical condition" and her "severe intractable pain" (Dkt. 11, pp. 8-9), but does not explore any errors relating to her physical impairments. Thus, any such claims are deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." Further, it is not for the Court to search the record for evidence to support plaintiff's argument. *See Marko v. Comm'r of Soc. Sec.*, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (citing *Jones v. Comm'r of Soc. Sec.*, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her claims. This Court does not conduct a de novo review in social security proceedings, and certainly cannot be expected to craft an argument on [Plaintiff's] behalf.")).

plaintiff, it is unreasonable to assign this report any weight at all in the light of subsequent medical records.  At the point in time that Dr. Czarniecki opined, plaintiff acknowledges that the only mental health records available were the report of Dr. Bray who found a minor impairment and the report of Dr. Youssef, who found a severe impairment.  Plaintiff objects to Dr. Czarnecki's statement, which the ALJ apparently accepted, that there was no treatment.  Yet, the record includes treating records starting in May 2015, which plaintiff contends square almost completely with the assessment of Dr. Youssef both in terms of diagnosis and severity of impairment.  Plaintiff also points out that all three examining and/or treating mental health professionals giving their assessments as of February 2014 and May 2015 show a major depressive disorder and "the three assessments on functional capacity are 45-50, 45 and 50."  (Dkt. 11, p. 6).  According to plaintiff, Dr. Czarnecki's opinion for anything after February 2014, should be given no weight.  And, plaintiff argues that in light of the opinions rendered in February, 2014 and May 2015, by professionals who actually saw plaintiff, there is no evidence that she is not disabled.

Plaintiff also observes that the ALJ seems to acknowledge (Tr. 24-25) that Dr. Bray's opinion is outweighed by the treating records, but asserts that the ALJ does not give the same scrutiny to the opinions of Dr. Czarnecki.  Plaintiff believes that this is also not correct because Dr. Bray's opinion is substantial evidence for

the year 2012, which is prior to the filing date (apparently for an unmentioned prior application).  Plaintiff asserts that "[i]t stands for nothing after that except a reasonable adjudicator could compare it with the DDS records of 2014."  (Dkt. 11, p. 7).  However, according to plaintiff, a reasonable adjudicator must now look at records from both 2014 and 2015 and the only opinions given are those of disability.

In response, the Commissioner maintains that substantial evidence supports the ALJ's evaluation of Dr. Czarnecki's opinion.  The Commissioner points out that opinions by State agency consultants may be given weight based on their supportability and consistency with the record as a whole.  *See* 20 C.F.R. § 416.927(e); Social Security Ruling 96-6p, 1996 WL 374180, at *2 (July 2, 1996).  Additionally, an ALJ may rely on a State agency consultant's opinion where the ALJ makes clear that she considered whether the opinion was consistent with the subsequent medical records.  *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

In February 2014, Dr. Czarnecki reviewed the evidence and opined that plaintiff's personality disorder and substance abuse disorders were severe impairments.  (Tr. 68).  Dr. Czarnecki opined that plaintiff retained the mental capacity to perform the following: initiate, sustain, and complete simple tasks; tolerate and respond adequately to brief, superficial, and routine low stress social

demands; and tolerate routine work related stress.  (Tr. 74).  He opined that plaintiff was moderately limited in sustaining complicated and detailed work-related activity and in dealing with complex social interaction.  *Id*.  According to the Commissioner, the ALJ considered this opinion and assessed it with significant weight because it was supported by the overall record.  (Tr. 25).  For example, in August 2012, plaintiff visited Dr. Bray for a consultative psychological examination.  (Tr. 366-69).  Dr. Bray opined that plaintiff had no difficulty with the following: comprehending and carrying out simple directions; performing repetitive routine simple tasks; getting along appropriately with supervisors; creating and maintaining good working relationships; and getting along appropriately with the public.  (Tr. 368).  Additionally, in February 2014, plaintiff visited psychiatrist Ibrahim Youssef, M.D., for a consultative examination.  (Tr. 422-425).  On examination, plaintiff's stream of mental activity was normal and she was attentive to sensorium and mental capacity related test questions involving orientation, memory, and information.  (Tr. 424-425).  Further, on psychiatric evaluation with treatment provider Team Mental Health in May 2015, plaintiff was fully oriented, with unremarkable cognition, fair insight and judgment.  (Tr. 436). Plaintiff denied suicidal or homicidal ideation and reported living with supportive family members who aided her in medication and treatment compliance.  *Id*. Moreover, despite plaintiff's allegations of disabling mental impairments, she took

care of two children and reported being able to go to the bank, Dollar Store,

restaurant, dentist, movie theatre, grocery store, mall, doctor's office, and post

office.  (Tr. 155, 451).  Based on the foregoing, the Commissioner maintains that

plaintiff's argument that Dr. Czarnecki's assessment should not be given weight

"for anything after February, [sic] 2014" is unavailing, where it is supported by

evidence post-dating the opinion.  Furthermore, the Commissioner points out that

plaintiff's contention that "a reasonable adjudicator must now look at records from

both 2014 and 2015" ignores the fact that the ALJ expressly considered and

discussed the record evidence throughout 2014 and 2015.  (Tr. 20-22).

Next, the Commissioner asserts that because there is no other medical

opinion or assessment of mental functional limitations by a treating source, the

ALJ was entitled to rely on Dr. Czarnecki's assessment.  *See Kimbrough v.

Comm'r of Soc. Sec*., 2010 WL 3862710, at *7 (E.D. Mich. Aug. 19, 2010) ("As

the ALJ noted in his decision, '[a]s for the opinion evidence, there are no treating

source opinions.' Under the circumstances, the ALJ properly relied on the opinions

of the state agency examiners.") (citations omitted), aff'd, 2010 WL 3842159 (E.D.

Mich. Sept. 28, 2010); *Toins v. Comm'r of Soc. Sec.*, 2014 WL 6389582, at *15

(E.D. Mich. Nov. 14, 2014) (upholding ALJ's RFC finding where "plaintiff [failed

to point to] record evidence that any of her treating physicians made . . .findings as

related to [p]laintiff's functional limitations," and "plaintiff has not provided an

14

explanation as to how the ALJ erred in considering the non-treating source's

opinion absent any other treating-source opinion").  Thus, according to the

Commissioner, the ALJ supportably found that Dr. Czarnecki's February 2014

opinion was consistent with the record evidence, which showed that, despite some

evidence of mental limitations from her severe impairments, plaintiff retained the

capacity for a range of simple, unskilled work.

In the view of the undersigned, the Commissioner has the better position.  It

has been established that, under certain circumstances, opinions from reviewing

State agency physicians "may be entitled to greater weight than the opinions of

treating or examining sources."  SSR 96-6p; 1996 WL 374180, at *3; *Brooks v.

Comm'r of Soc. Sec.*, 531 Fed. Appx. 636, 642 (6th Cir. 2013) ("[O]pinions from

State agency medical and psychological consultants ... may be entitled to greater

weight than the opinions of treating or examining sources.") (quoting SSR 96-6p,

1996 WL 374180, at *3); *Benson v. Colvin*, 2014 WL 3919577, at *9 (E.D. Ky.

Aug. 11, 2014) ("[I]t is not a per se error to give more weight to the opinion of a

non-examining physician than that given to an examining or treating physician's

opinion.").  Indeed, the opinions of state agency medical and psychological

consultants may be entitled to significant weight where they are supported by

record evidence.  *Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 713 (6th Cir.

2013); 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)).  Furthermore, the ALJ

can reasonably credit the opinion of a reviewing medical source, despite the fact that the source did not have access to the entire record, where the conclusion that the claimant retained the capacity to work was supported by the totality of the medical and vocational evidence in the record.  *Glasgow v. Comm'r of Soc. Sec.*, 690 Fed. Appx. 385, 387 (6th Cir. 2017) (citing *McGrew v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 26, 32 (6th Cir. 2009) (concluding that an ALJ may rely on a state agency physician's opinion that is not based on all of the medical evidence in the record if the ALJ takes into account any evidence that the physician did not consider)).  As the Commissioner points out, the ALJ expressly considered and discussed the record evidence throughout 2014 and 2015, including Dr. Youssef's assessment and plaintiff's therapy records with Team Mental Health.  (Tr. 20-22). Significantly, no acceptable medical source imposed mental limitations on plaintiff greater than those found by the ALJ and Dr. Czarnecki.[3]  Rather, plaintiff suggests

---

[3] Plaintiff suggests that the various GAF scores are opinion evidence to which the ALJ failed to defer. GAF scores, however, do not constitute medical opinions.  As explained in *Benton v. Comm'r of Soc. Sec.*, 2017 WL 6333862, at *8 (W.D. Mich. Dec. 12, 2017), while the Court must generally defer to the medical opinions expressed by a claimant's care providers, *see King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984), the ALJ is not required "to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir. Feb. 9, 2006) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).  In addition, under the regulation in effect at the time of the ALJ's decision, the majority of GAF scores were issued by non-acceptable medical sources, to whom deference is not required.  *See e.g.*, *Roulette v. Colvin*, 2015 WL 3951947, at *10 (E.D. Tenn. June 29, 2015) ("Not only do these GAF scores not constitute treating physician opinions, the majority of GAF scores were assessed by non-acceptable medical sources.") (citing 20 C.F.R. §§ 404.1513(a); 404.1527(a)(2), 416.927(a)(2) (applicable to claims filed before March 27, 2017)).

that Dr. Youssef found plaintiff's mental impairments to be more "severe" and that the ALJ did not fully account for the severity of plaintiff's mental impairment. Plaintiff does not explain how this translates into additional restrictions or limitations beyond those found by the ALJ, particularly when Dr. Czarnecki had the benefit of Dr. Youssef's examination when he formulated his opinions.  (Tr. 69).

Additionally, the mere fact that plaintiff suffers from a particular condition or carries a certain diagnosis does not equate to disability or a particular RFC. Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from– thought the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  There is no question that the ALJ found plaintiff to have "severe" mental impairments, however, "[a] claimant's severe impairment may or may not affect his or her functional capacity to work.  One does not necessarily establish the other."  *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004).  "The regulations recognized that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007).  Thus, the mere existence of any severe

17

condition from which plaintiff may have suffered does not necessarily establish any functional limitation or disability.   Plaintiff has not offered any evidence suggesting that she is more limited or restricted than the ALJ found in his RFC. The undersigned finds that, reading the ALJ's decision as a whole, the ALJ reasonably considered and discussed the record evidence, and reviewed and weighed the medical opinions of the examining and consulting physicians concerning plaintiff's mental limitations, and plaintiff's claim of error in this regard should be denied.

### 2.      Consideration of GAF Scores

Plaintiff contends that the ALJ erred in discounting plaintiff's lower GAF scores, more particularly those from 2014 and 2015.  Specifically, plaintiff challenges the ALJ's rationale, which was that plaintiff had only moderate limitations (Tr. 25), rather than the greater limitations that the scores suggested. According to plaintiff, the evaluators who assessed those scores, both treating and examining, all concluded that the limitations were beyond moderate and up to serious.  Plaintiff acknowledges that the ALJ has the discretion to reject these GAF scores, but only if that rejection is supported by substantial evidence.  As the 6th Circuit stated in *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836 (6th Cir. 2016): "A GAF score of 41-50 'reflects the assessor's opinion that the subject has serious symptoms or serious impairment of social or occupational functioning.' *Keeton v.*

*Comm'r of Soc. Sec.*, 583 F. App'x 515, 520 n.2 (6th Cir. 2014) (quoting *Kornecky*

*v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511(6th Cir. 2006))."  The Court had

previously stated that *Keeton* stands for the rule that the courts look to "consistency

among low GAF scores to determine that an ALJ minimized the severity of a

claimant's symptoms and failed to provide good reasons for assigning limited

weight to a treating doctor's opinion."  *Miller*, 811 F.3d at 836.  Plaintiff maintains

that the ALJ's selective reading of the medical and testimonial evidence is not

supported by the record read as a whole, and that her rationale for the GAF scores

being given "only some weight," fails the test set out by the Sixth Circuit in *Miller*.

Plaintiff supports this argument as follows:

> In her rationale at AR 16, the ALJ cites the statements
> given by claimant at ex. 4E (AR 149-162) in late 2013.
> Claimant there stated that she needed help with her
> personal needs (AR 155), did not cook, and needed help
> with all tasks.  There is nothing in 4E suggesting the
> independence on the level found by the ALJ.  The ALJ
> also asserts that AR 415 shows non-disability with
> statements to the internist that she can drive and that she
> does some housekeeping.  But, these statements are not
> quantified by the doctor or the claimant and do not
> contradict anything.  She is not required to do the old sit
> in a cold darkroom and vegetate test, although her
> testimony was that as of July, 2015, she did spend most
> of her day in the dark (AR 37), which the therapist also
> noted (AR 451) and that she copes by isolating herself.
> Also, a statement cited by the ALJ that she did drive in
> 2014 is not the same as cannot drive in 2015.  We agree
> that there is a checklist of independence at AR 445, but
> the ALJ does not evaluate the seriousness of the tight
> monitoring of her medications by her son just to keep her

at the level she has reached.  The ALJ's finding (AR 17)
is itself a contradiction (she is independent in taking
medicine with the help of her son).  That is somewhat
non-sequitur since dependence in doing something belies
independence.  Also, the typed as opposed to check-listed
part of the exhibit shows that she is unable to conduct
activities of daily living (ADL) and chores due to
physical and mental health.  (AR 428).

(Dkt. 11, p. 8).  According to plaintiff, based upon the totality of the record, all the

mental health professionals seeing her after 2012 agree that plaintiff's level of

functioning is inconsistent with the ability to maintain work.  Plaintiff also

contends that there is no basis to determine what the ALJ meant by "some weight"

as it relates to the GAF scores, because it is so vague that the result is the same as

no weight at all.

In response, the Commissioner argues that a GAF score does not reflect a

clinician's opinion of functional capacity, and, therefore, an ALJ is not required to

consider it when determining a claimant's ability to work.  *Shorkey v. Comm'r of

Soc. Sec.*, 2014 WL 5361995, at *3 (E.D. Mich. Sept. 12, 2014) (citing *Howard v.

Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002), aff'd, 2014 WL 5362069

(E.D. Mich. Oct. 21, 2014)).  The Commissioner further asserts that the ALJ was

not required to accord weight to, much less articulate her reasons for rejecting a

GAF score.  *Robertson v. Comm'r of Soc. Sec.*, 2015 WL 9948818, at *7 (E.D.

Mich. Oct. 29, 2015) (citing *Kornecky v. Comm'r of Soc. Sec.*, 2006 WL 305648,

*13 (6th Cir. February 9, 2006)), aff'd, 2016 WL 366778 (E.D. Mich. Jan. 29,

2016).  The Commissioner also points out that despite having no obligation to do so, the ALJ considered the GAF scores of record, ranging from 45 to 66, and appropriately gave them only some weight because the record supports no more than moderate limitations.  (Tr. 25).  Notably, as the ALJ found (Tr. 25), GAF scores indicating serious limitations are inconsistent with plaintiff's lack of mental health treatment until May 2015 and her ability to perform various activities of daily living, including taking care of her daughter and son, being independent with personal care, engaging in housecleaning, and shopping.  (Tr. 155, 445, 451).  Although plaintiff contends that "there is nothing [in the record] suggesting the independence on the level found by the ALJ," (P. Br. 8), in May 2015, plaintiff was specifically found to be independent in several activities of daily living, including: eating, dressing, using the toilet, bathing, grooming, transferring, mobility in the community, taking medicine, and ambulation.  (Tr. 445).  According to the Commissioner, plaintiff has failed to show any error in the ALJ's consideration of the GAF scores or discussion of the record evidence.

The undersigned agrees with the arguments posited by the Commissioner.  As observed in footnote 3, *supra*, GAF scores do not constitute medical opinions.  As explained in *Benton v. Comm'r of Soc. Sec.*, 2017 WL 6333862, at *8 (W.D. Mich. Dec. 12, 2017), while the Court must generally defer to the medical opinions expressed by a claimant's care providers, *see King v. Heckler*, 742 F.2d 968, 973

(6th Cir. 1984), the ALJ is not required "to put stock in a GAF score in the first

place." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir. Feb.

9, 2006) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir.

2002)).  Indeed, a "GAF score does not reflect a clinician's opinion of functional

capacity, and, therefore, an ALJ is not required to consider it when determining a

claimant's ability to work." *Shorkey v. Comm'r of Soc. Sec.*, 2014 WL 5361995, at

*3 (E.D. Mich. Sept. 12, 2014), report and recommendation adopted, 2014 WL

5362069 (E.D. Mich. Oct. 21, 2014) (citing *Howard v. Comm'r of Soc. Sec.*, 276

F.3d 235, 241 (6th Cir. 2002) (ALJ is not required to consider GAF score in

assessing residual functional capacity)).  In addition, under the regulations in effect

at the time of the ALJ's decision, the majority of GAF scores were issued by non-

acceptable medical sources, to whom deference is not required.  *See e.g.*, *Roulette*

*v. Colvin*, 2015 WL 3951947, at *10 (E.D. Tenn. June 29, 2015) ("Not only do

these GAF scores not constitute treating physician opinions, the majority of GAF

scores were assessed by non-acceptable medical sources.") (citing 20 C.F.R.

§§ 404.1513(a); 404.1527(a)(2), 416.927(a)(2) (applicable to claims filed before

March 27, 2017)).  Thus, the Court is not presented with a situation such as that

found in *Keeton*, where the Sixth Circuit relied on the existence of consistency

among low GAF scores to support a determination that an ALJ minimized the

severity of a claimant's symptoms and failed to provide good reasons for assigning

limited weight to a treating doctor's opinion.  *See Keeton v. Comm'r of Soc. Sec.*, 583 Fed. Appx. 515, 529-30, 530 n.6 (6th Cir. 2014).  For these reasons, the undersigned finds no reversible error as to the ALJ's assessment of the GAF scores in this case.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 21, 2018          s/Stephanie Dawkins Davis
                                 Stephanie Dawkins Davis
                                 United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 21, 2018, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                 s/Tammy Hallwood
                                 Case Manager
                                 (810) 341-7887
                                 tammy_hallwood@mied.uscourts.gov